

ENTERED
03/10/2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| BLAINE BRUCE BRUNDAGE | § | |
| | § | |
| DEBTOR(S) | § | CASE NO. 12-35869 |
| | § | |
| BLAINE BRUCE BRUNDAGE | § | |
| | § | |
| PLAINTIFF(S) | § | ADVERSARY NO. 12-3453 |
| | § | |
| VS. | § | |
| WANDA SHEFFIELD ANDERSON | § | |
| Independent Executrix of the Estate of | § | |
| William K. Anderson | § | |
| DEFENDANT(S) | § | |

**ORDER**

I.

Debtor Bruce Brundage filed an adversary complaint against Wanda Sheffield Anderson, Independent Executrix of the Estate of her late husband, William K. Anderson to avoid a second lien she claimed against 101.247 acres owned by Brundage located at the address of 20077 Triple L Lane, New Ulm, Texas. Brundage contends the property is his homestead. Anderson denies that Brundage is entitled to that homestead exemption and argues that the property secures a valid second lien.

The issues tried by the Court are: (1) whether debtor's real estate was exempt homestead at the time the debtor executed notes in favor of William Anderson; (2) whether William Anderson knew or should have known that the property was debtor's homestead; (3) what amount is due on the first lien note executed August 30, 2005 which William K. Anderson purchased from the Lindleys, the original lenders.

After reviewing the testimony and admitted evidence at trial, this Court concludes that Brundage established and maintained the property as his homestead from approximately 2005 to the date of the bankruptcy petition. Consequently, Williams' alleged 2nd lien is invalid under the Texas Constitution Art. XVI, §§ 50 &51 and Texas Property Code 40.001 et seq. Second, William K. Anderson was on notice at the time he loaned $400,000 to debtor that debtor lived on the 101.247 acres on which Anderson ostensibly took a second lien. Third, the amount of the first lien note on the date acquired by William K. Anderson was $100,000.

## II. Law at issue

The parties agree that this court has jurisdiction over this core matter. Debtor/Plaintiff cites numerous statutes and rules as the basis for his claim. However, Plaintiff's contentions most directly relate to the Texas Constitution Art. XVI, §§ 50, 51; Tex. Prop. Code §§ 41.001(a), and (b)(1), 41.002(b)(2); and 11 U.S.C. § 522 (e)

and (1).

The Texas Constitution states:

> 50. Homestead; Protection from Forced Sale; Mortgages, Trust Deeds and
> (a)The homestead of a family, or a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:
> (1) the purchase money thereof, or a part of such purchase money;
>
> 51. Amount of homestead; uses
> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or contiguous lots amounting to not more than 10 acres of land, together with any improvements on the ;and; provided, that the homestead in a city, town or village shall be used for the purposes of a home, or as both an urban home and a place to exercise a calling or business, of the homestead claimant, whether a single adult person, or a the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired; provided further that a release or refinance of an existing lien against a homestead as to a part of the homestead does not create an additional burden on the part of the homestead property that is unreleased or subject to the reference, and a new lien is not invalid only for that reason.

Texas Constitution Art. XVI, §§ 50, 51

The Texas Property Code states:

§41.001. INTERESTS IN LAND EXEMPT FROM SEIZURE.
(a) A homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.

>> (b) Encumbrances may be properly fixed on homestead property for:
>>> (1) purchase money;

Tex. Prop. Code §§ 41.001(a) and (b)(1)

The Texas Property Code also states:

> §41.002. DEFINITION OF HOMESTEAD
>
> ...
>
>> (b) If used for the purposes of a rural home, the homestead shall consist of :
>
> ...
>
>> (2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.

Tex. Prop. Code § 41.002(b)(2)

The Bankruptcy Code states in pertinent part.

> (e) A waiver of an exemption executed in favor of a creditor that holds an unsecured claim against the debtor is unenforceable in a case under this title with respect to such claim against property that the debtor may exempt under subsection (b) of this section.
> . . . .
>
> (l) The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a dependent of the debtor may file such a list, or may claim property as exempt from property of the estate on behalf of the debtor, Unless a party in interest objects, the property claimed as exempt on such list is exempt.

11 U.S.C. § 522 (e)and (l)

## III. Procedural Issue

In order to contest a debtor's claim of exemption property, Fed R. Bankruptcy P. Rule 4003 (b)(1) requires:

> (b) Objecting to a claim of exemptions
> (1) Except as provided in paragraphs (2) and (3), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under §341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

The United States Supreme Court in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992), held that failure to object to debtor's exemptions within the 30 day limit barred the trustee or objecting creditor from objecting, even where a debtor's claim of exemption was baseless.

Debtor filed his bankruptcy petition August 6, 2012, listing his street address and mailing address as 20076 Triple L, New Ulm, Texas 78950. The same day he filed Schedule A- Real Property listing as his homestead 101.247 acres at the same address. On August 15, 2012, the Bankruptcy Noticing Center sent notice by first class mail of Official Form 9E to "William K. Anderson c/o Wilbanks and Wilbanks, PC., One Riverway 17700, Houston Texas 77056-1957." (Case No. 12-35869, Doc. 11) Anderson and his counsel were thus given notice that debtor had filed Chapter 11

Bankruptcy and that the deadline to object to exemptions was 30 days following the completion of the September 13, 2012 meeting of creditors. Defendant has never claimed it did not receive actual, timely notice of this bankruptcy case.

On August 21, 2012, debtor filed all of his schedules and statement of financial affairs which included both Schedule A and Schedule C listing the 20077 Triple L, New Ulm, Texas as exempt under Tex. Const. Art. 16 §§ 50, 51 and Texas Property Code §41.001 & 41.002. The first meeting of creditors was scheduled for and completed on September 13, 2012. Following the meeting of creditors, debtor amended his petition against listing 20076 Triple L, New Ulm, Texas as his mailing and street address. No one objected to debtor's homestead exemption.

Under *Taylor vs. Freeland & Kronz, supra*, Anderson, a creditor who did not object timely is barred from denying debtor's homestead claim. *In re Sadkin*, 36 F.3d 473, 477 (5th Cir. 1994)(Bankruptcy and district court orders affirmed where creditor with actual notice of bankruptcy petition and debtor's claimed exemptions failed to request an extension or timely object under Rule 4003 (b)). However, in *In Re Crowell*, 138 F.3d 1031, 1033 (5th Cir. 1998), the court held that where a debtor brought an adversary proceeding to invalidate a creditor's lien on property claimed as homestead, debtor could not complain that the creditor neglected to file an objection under Rule 4003(b) to debtor's claim of exemption. Consequently,

defendant's failure to file an objection to debtor's claim of exemption does not preclude this court from considering the validity of Anderson's liens.

## IV. Facts

Debtor bought the 101.247 acres in Austin County on August 30, 2005, from Lawrence and Lisa Lindley. (Pl. ex. 1). The purchase price was $765,330.70 of which the Lindleys owner financed $695,000.00 of the purchase money. (Tr. Day 2 p.5; Pl. ex. 2 & 3). Debtor signed a real estate lien note in which he promised to repay the Lindleys in 72 monthly payments of principal and interest at 6.5%. (Pl. ex. 10). The note that matured August 30, 2011. (P. ex. 2). In addition, the Lindleys sold Debtor a 18'x 76' manufactured home the same day. The warranty deed with vendor's lien, the deed of trust and the bill of sale for the manufactured home were filed in the deed records of Austin County as instrument nos.055451, 055452, and 055453 August 31, 2005.

In August 2005 Debtor purchased a title policy from Stewart Guaranty Title Co. entitled "Texas Residential Owner Policy of Title Insurance One-to-Four Family Residence. (Pl ex. 3). Debtor moved into the mobile home permanently attached to the land which had been previously occupied by relatives of the Lindleys.[1] Debtor

---

[1] Debtor's daughter, Stephanie Brundage, testified that her father moved into the manufactured home in 2006. (Tr. day 2 P.30).

improved the property by adding a covered porch in front of the home. Debtor occupied the manufactured home on the property from 2005 until the date of the bankruptcy petition, but never formally filed for a homestead exemption to reduce his county tases on the property.

William Anderson and debtor were involved in various business transactions. In August 27, 2009, William Anderson loaned debtor $400,000 to be secured by a second lien against debtor's 101.247 acres. (Pl. ex. 11). The second lien deed of trust lists debtor's/grantor's mailing address as 20076 Triple L, New Ulm, Texas. (Id.) The real estate lien note recites that the loan is for 7 ½ % and will mature August 27, 2015, with annual interest on matured, unpaid amounts of 18%. (Pl. ex. 11). The second lien deed of trust at page 5 states:"10. In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law." (Id.) No where in the note and second lien documents does debtor represent that 101.247 acres is not his homestead.

As to this second lien, Anderson had the Belleville Abstract Co. conduct a formal closing on August 27, 2009. In addition, Anderson purchased a lender's title policy from Stewart Guaranty Title Co. (Def. ex. 17). All documents at the closing reflect Debtor's fee ownership of the 101.247 acres and the Lindleys' first lien. Debtor estimated the balance on the Lindleys' first lien to be no more than $350,000

as of August 27, 2009. No where in the title documents or HUD settlement statement is debtor required to make any representation about his homestead claim to the 101.247 acres. (Id.)

Subsequently, on September 1, 2009, Anderson loaned $140,000. to Westland Products, Inc. and/or Blaine Brundage. (Pl. ex. 14, Def. proof of claim). The loan was due on demand or on August 31, 2010, whichever was earlier to be paid at 15% per annum. This promissory note lists notemaker's address as : "Mr Blaine Brundage Westland Products, Inc. 100309 Surrey Oaks Houston, Texas 77024." (Id.) Debtor has testified that Surrey Oaks is his daughter's address where he maintains an office. The Court credits this testimony.

Thereafter, on January 27, 2010, William Anderson loaned Westland Products, Inc. and/or Blaine Brundage $180,000. (Pl. ex. 12). The parties signed an unsecured note payable on demand with 15% interest per annum. (Id). The demand note lists borrower's address as 20076 Triple L, New Ulm, Texas. (Id.). On July 1, 2010 Anderson demanded repayment of this note. (Pl. ex. 13).

On August 17, 2011, Anderson purchased from the Lindleys their first lien note on debtor's 101.247 acres. The Lindleys assigned their lien to Anderson. (Pl. ex. 17).

On August 17, 2011, Anderson insisted debtor sign an instrument entitled "AGREEMENT." (Pl. ex.18). This agreement lists Brundage's debts to Anderson as:

> 1. Approximately $380,000.00 plus accrued interest from April 2010, all as set forth in that certain Promissory Note dated August 27, 2009 and being secured by a second lien on your ranch property located in Austin County, Texas, and
>
> 2. $150,000.00 plus accrued interest as set forth in that certain Promissory Note dated January 27, 2010, and
>
> 3. 50% of the profits received pursuant to that certain Loan Agreement dated January 27, 2010, and
>
> 4. $30,000.00 plus accrued interest on personal loans given pursuant to the Loan Agreement in 7, 2010, and 3. Above, and
>
> 5. $1,200.00 plus accrued interest on a personal loan given to you on November 5, 2010, and
>
> 6. $100,000.00 plus accrued interest on my purchase of that certain Promissory Note dated August 30, 2005, between Larry and Lisa Lindley and being secured by a Vendors Lien and Dee of Trust on the property described in 1. above.

You have represented to me that there is currently due and owing on the Note referenced in 6. above an approximate amount of $240,000.00 plus accrued interest. You further agree to execute an extension of this note, as well as the note referenced in 1. above inasmuch as maturity has been reached in 6. above, and breach has occurred in 1. above.

The Court finds that paragraph 6. which states that Anderson paid the Lindleys $100,000. plus accrued interest for the first lien and the next paragraph in which Anderson recites that Brundage told Anderson that Brundage owed $240,000 plus accrued interest appear to be inconsistent. However, Debtor did sign this Agreement. Nevertheless, debtor testified that at the time of the transfer of the first lien to

Anderson, the actual balance owed to the Lindleys on the first lien was $100,000.00.

Anderson's attorney, Erwin Wilbanks, filed all four Anderson's proofs of claim. (Pl. ex. 10, 11, 12, 14). Wilbanks listed the balance due on the first lien note William K. Anderson bought from the Lindleys as $382,526.47. There is no dispute that when Anderson purchased the first lien, debtor was in default. Brundage had not made a payment on this first lien since mid-2010. Wilbanks admitted in testimony he did not have personal knowledge about the balance due on this first lien. Nevertheless, Wilbanks created an amortization schedule and added an account summary to the proof of claim which is not a factual representation of the balance due on the note at the time of transfer of the first lien or what was due at the time of the bankruptcy filing. This Court finds that Wilbanks' amortization schedule and summary statements added to Anderson's proof of claim on the first lien, plaintiff's exhibit 10, are not credible.

### V. Homestead

To establish homestead rights in property, a claimant must intend to claim the land as homestead and to actually make overt actions to use the land for homestead purposes. *Sanchez v. Telles*, 960 S.W.2d 762, 770 (Civ. App.–El Paso 1997). Plaintiff has the burden of proof to show the homestead character of the 101.247 acres. *AG Acceptance v. Veigel*, 564 F.3d 695, 698 (5th Cir. 2009).

Plaintiff moved into a 18'x72' manufactured home located on the 101.247 acres in 2005. The weight of the relevant evidence shows plaintiff still lived on the land on August 6, 2012, the date he filed his bankruptcy petition. This Court finds that debtor has borne his burden of proof to show the property at issue is his homestead.

Anderson bases her contention that 20076 Triple L, New Ulm, Texas is not debtor's homestead on: (1) debtor's failure to formally file for a homestead exemption on the property; (2) a statement by an appraiser that the "mobile home has been designated as personal property, and therefore is not considered in this appraisal" and (3) statement in the same appraisal that the 101.247 acres was vacant land. (Def. ex. 18).

Anderson cites no law which requires a claimant to request a homestead exemption for the purpose of county taxes in order to be eligible for a Texas homestead exemption.[2] Moreover, the appraiser's statement in Defendant's exhibit 18 is not attributed to the debtor by the appraiser. Even assuming debtor made such a statement, it would not impact debtor's right to claim the land where the trailer sits as exempt homestead. Lastly, the appraiser's actual statement were " the subject property is an effectively vacant tract of land......The subject has: a 448 S.F.

---

[2] The record shows debtor had an agricultural exemption on the property.

workshop, a well and septic tank, and an 18'x72' mobile home which has been kept in good condition." (Def. ex. 11, Summary Appraisal Report and page 1 of Additional Comments).

## VI. Estoppel

Anderson argues that Debtor should be judicially estopped from claiming that his land is homestead because he signed the second lien note, deed of trust, and HUD settlement agreement. Anderson's contention seems to be that debtor failed to list his homestead claim as a lien against the land when he listed the Lindleys' first lien. Anderson cites no case which equates an exemption with a lien.

Assuming without deciding that the doctrine of judicial estoppel would apply to a recorded loan document, the Texas Supreme Court long ago held that where a lender obtained and filed a deed of trust with an affidavit in which the husband denied the property at issue was homestead, the lender was held responsible for knowing that the husband and family lived on the property. *Texas Land & Loan Co. v. Blalock*, 76 Tex. 85, 89, 13 S.W. 12, 15 (Tex 1890). Specifically, the Supreme Court stated:

> The fact of actual possession and use, as the home of the family, was one against which the lender could not shut its eyes; and this fact, coupled with the interest held by the borrower in the land, made the property homestead in fact and in law, on which the constitution declares no lien, such as claimed in this case, can exist. Every person dealing with land must take notice of an actual, open, and exclusive possession; and when this, concurring with interest in the possessor,

makes it homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make.

13 S.W. at 13; See also *In re Niland*, 825 F. 2d 801, 808-809 (5th Cir. 1987).

This Court has scrutinized defendant's exhibit 18, the business record of the Bellville Abstract Company relating to the August 27, 2009, closing on the second lien note. No document refers to whether debtor himself claims a homestead interest in the property. This Court finds that debtor never asserted the property was not his homestead.

## VII. Evidentiary objections

Anderson argues that it was error for this Court to admit the depositions of Lisa Lindley and Bill Johnson, instead of requiring debtor to formally prove that Mrs. Lindley and Mr. Johnson were unavailable or that their live testimony was impossible to obtain for trial in violation of Bankr. R. Pro. 7032. At trial the Court allowed Plaintiff to introduce the two depositions based on the representations of debtor's counsel and directed each side to designate portions of the transcript.

On the record debtor's counsel stated that counsel for Anderson had told him that Bill Johnson was in Canada and would not be available for trial. Regarding Lisa Lindley, debtor's counsel stated that Mrs. Lindley had explained to himself and counsel for Anderson that her husband was gravelly ill and she had difficulty

attending the deposition, much less the trial. Counsel for debtor explained " the reason we took the deposition was that she could not be here, and also we had to reset the deposition two or three times because of her husband's illness. (Tr. Day 1 p.31). Counsel for Anderson denied that the parties had agreed to use Mrs. Lindley's deposition or Bill Johnson's deposition instead of their testimony at trial.

Mr. Johnson is the real estate agent who was familiar with the debtor's property and the debtor's use of the land as homestead. Mrs. Lindley and her husband sold the land to debtor in 2005, carried the first lien on the property for six years, and sold the first lien to William Anderson for what Mrs. Lindley testified was the remaining $100,000. debtor still owed on the first lien note. Counsel for Anderson scheduled both depositions. Debtor seeks to admit only questions asked by counsel for Anderson and the answers of the deponent.

Both Mr. Stephen Leyh, counsel for Anderson, and Mr. Larry Vick, counsel for debtor have appeared before this Court frequently. Both counsel have presented themselves as honest and reputable attorneys. It is unfortunate that this confusion over the admissibility of relevant testimony exists.

However, Mr. Vick failed to obtain any agreement in writing as to the use of the deposition, to designate deposition excerpts in his list of exhibits, and/or failed to supplement his list of exhibits to make clear his understanding that opposing

counsel had agreed to allow the witnesses to testify by deposition. In view of the absence of designation, this Court does not admit any deposition testimony offered by debtor.

### VIII. HOLDER-IN-DUE COURSE

Although Anderson did not formally raise the holder-in-due course defense in her answer to the complaint or in the pretrial statement, Anderson filed a brief which asserted that debtor was barred from raising all personal defenses because William Anderson was a holder-in-due course. The admitted evidence and testimony establishes that William Anderson was not an innocent third party to any loans he made to Westland Products, Inc. or to debtor. Instead, William K. Anderson was an active participant with debtor in debtor's business activities for some years and personally invested substantial funds in loans to debtor and debtor's company. Moreover, the first lien note which was the only obligation transferred from another party, the Lindleys, was in default at the time Anderson bought it. Consequently, to claim William K. Anderson was a holder-in-due-course is a highly questionable argument by defendant.

More importantly, debtor's claim of homestead is not a personal defense to which the holder-in-due-course doctrine might apply. The Texas Supreme Court has stated "the homestead interest is a legal interest created by the constitution that

provides prophylactic protection from all but [a few] types of constitutionally permitted liens against homesteads. This interest ...gives protective legal security rather than vested economic rights." *Heggen v. Pennelton*, 836 S.W. 2d 145, 148 (Tex. 1992); See also *In re Rogers*, 513 F.3d 212, 225 (5th Cir. 2008). Even assuming William K. Anderson was a holder-in-due course, debtor's claim of a homestead exemption would not be defeated by holder-in-due course status. *In re Niland*, supra.

## IX. Conclusion

Debtor has proven that the property at issue is exempt homestead. Defendant Anderson has not argued that the property exceeds the acreage which a single debtor may claim in Texas; consequently, the Court finds that issue is waived.

Anderson on behalf of the estate of William K. Anderson holds a secured, first lien against the debtor's property, which based on the credible testimony and evidence, this Court values as $100,000. on the date the Lindleys transferred the lien to William K. Anderson. The Court directs defendant to submit an accurate figure based on the underlying first lien contract for the balance of $100,000. as of the date of transfer.

Based on the evidence admitted at trial and Texas law which places notice on a lender as to the current usage of the real property at the time of the loan, the Court

finds that William K. Anderson knew or was charged with knowledge that debtor used and intended to use the 101.247 acres at issue as his homestead.

Signed this 7 day of March, 2014 at Houston, Texas.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE